UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cr-00094-TWP-TAB |
| | ) | |
| JOSEPH KREJSA, and | ) | -03 |
| COREY POSEY, | ) | -04 |
| | ) | |
| Defendants. | ) | |

### ENTRY ON MOTIONS *IN LIMINE*

This matter is before the Court on Motions *in Limine* filed by the United States of America ("Government") and Defendants Joseph Krejsa ("Krejsa") and Corey Posey ("Posey") (collectively, "Defendants") (Filing No. 221; Filing No. 222; Filing No. 223; Filing No. 224; Filing No. 227). The seventeen-count Superseding Indictment in this criminal matter charges Krejsa with two counts of false report (Counts Five and Eight) and Posey with one count of false report (Count Four) in violation of 18 U.S.C. § 1519 (Filing No. 64). The other fourteen counts in the Superseding Indictment relate to co-Defendants Joseph Chase Winkle ("Winkle") and Jeremy Gibson ("Gibson"), who have pled guilty to the charges against them, leaving Krejsa and Posey as the remaining defendants to be tried. In their Motions, the parties ask the Court to issue preliminary rulings regarding the admissibility of certain evidence, arguments, or witnesses. For the following reasons, the motions *in limine* are **granted in part and denied in part**.

### I. BACKGROUND

This case involves six separate incidents in which Muncie (Indiana) Police Department ("MPD") officers used excessive force and/or wrote false reports about those uses of force, occurring between March 2018 and February 2019. Winkle, Posey, and Gibson were employed

as officers with MPD, and Krejsa was employed as a sergeant. On March 11, 2020, a federal grand jury returned a twelve-count Indictment arising from five separate incidents involving Winkle, Krejsa, and Gibson (Filing No. 1).

More than a year later, on April 13, 2021, the grand jury returned the seventeen-count Superseding Indictment, adding a sixth incident and adding Defendant Posey (Filing No. 64). The lead Counts (Counts One through Five) involve the conduct of all four Defendants in connection with the arrest of L.G. on August 9, 2018. Specifically, during the arrest of L.G., Winkle is charged with using his knee to strike L.G.'s head and neck, and Gibson is charged with stomping on and using knee strikes against L.G.'s head, all without legal justification. Count One alleges that Winkle used unreasonable force during the arrest of L.G. in violation of 18 U.S.C. § 242. Count Two alleges that Gibson used unreasonable force during the arrest of L.G. in violation of 18 U.S.C. § 242. Counts Three, Four, and Five allege that Winkle, Posey, and Krejsa, respectively, wrote false reports about this incident in violation of 18 U.S.C. § 1519. The remaining Counts (Counts Six through Seventeen) do not allege or charge Posey with any illegal conduct, nor do those Counts contain any allegations about Posey. Count Eight alleges that Krejsa wrote a false report, in violation of 18 U.S.C. § 1519, about a separate incident that occurred more than two months earlier. That earlier incident occurred on June 5, 2018, wherein Winkle used similar unreasonable force against N.B. and R.F. during their arrest.

## II.     LEGAL STANDARD

"[J]udges have broad discretion in ruling on evidentiary questions during trial or before on motions in *limine*." *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The Court excludes evidence on a motion in *limine* only if the evidence clearly is not admissible for any purpose. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D.

Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at 1400–01. Moreover, denial of a motion in *limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means that, at the pretrial stage, the Court is unable to determine whether the evidence should be excluded. *Id.* at 1401. "The purpose of a motion in *limine* is not to weigh competing arguments about the strength of the parties' evidence and theories, nor is it to decide which party's assumptions are correct. A motion in *limine* weeds out evidence that is not admissible for any purpose." *Wash. Frontier League Baseball, LLC v. Zimmerman*, 2018 U.S. Dist. LEXIS 106108, at *10 (S.D. Ind. June 26, 2018).

### III.   DISCUSSION

The parties have asked the Court to issue preliminary rulings regarding the admissibility of certain evidence, arguments, or witnesses in their Motions *in Limine*. The Court will address each Motion in turn.

A.   **Filing No. 221: Government's Motion *in Limine* to Admit Testimony about Use-of-Force Review Meeting**

The Government asks the Court to admit testimony from up to five physical tactics ("PT") instructors about a use-of-force review that was conducted at a meeting in August 2018. The Government explains that it intends to prove at trial that Krejsa abused his authority on at least two occasions by drafting false reports to cover up excessive force by the then-Police Chief's son, co-Defendant Winkle, whom Krejsa knew to regularly use substantial force and cause significant injuries to arrestees as well as another officer, co-Defendant Gibson. The Government also intends to prove that Posey similarly abused his authority on at least one occasion by writing a false report to cover up excessive force by Winkle, whom he also knew to have used unreasonable force on previous occasions.

The Government argues,

> To establish that the defendants who helped cover up the excessive uses of force recognized that the force used by their co-defendant officers was excessive (meaning that it was unreasonable, based on all of the surrounding circumstances), the government intends to call as witnesses at trial several MPD officials who currently serve or have previously served as physical tactics ("PT") instructors. In addition eliciting from these witnesses fact-testimony about the training MPD officers receive regarding use of force and report writing, the government also seeks to elicit testimony from two or more of these PT instructors about a force-review meeting that occurred on August 28, 2018, during which six MPD trainers gathered at the request of the Department leadership to watch body camera video of several incidents, including the arrest of L.G., and analyze the propriety of the uses of force during those incidents. Upon viewing the video of the L.G. incident described above, the instructors unanimously concluded that Winkle's force was without justification and was utterly outside the scope of the training that every MPD officer receives. Each of these instructors was trained in the same way and familiar with the same policies as the defendants.

([Filing No. 221 at 5](#).)

The Government requests that it be allowed to call "any combination of the five PT instructors who attended the August meeting (two of whom will likely already be testifying at trial about the use of force training officers received) to testify, very briefly, about this single meeting and their conclusions about certain uses of force reviewed during the meeting." *Id.* at 6.

The Government contends,

> This evidence—the fact that each of these instructors immediately and without difficulty recognized that the use of force captured on video was far outside of policy—tends to prove that the defendants were intentionally untruthful when they wrote reports stating or implying that that same use of force, which they viewed on the same videos, was justified. The power of this evidence—i.e., its probative value—stems from the fact that multiple officers, trained in the same way, reached the same conclusion immediately and unanimously, demonstrating that this assessment is not a close call for officers who, like the defendants, have been trained on use-of-force principles. In other words, the group's clarity and unanimity is highly relevant to show the defendants' intent to cover up wrongdoing when they wrote their false reports about the incident.

*Id.* at 6–7.

The Government argues that the testimony of all officers who attended the use-of-force review meeting would not be cumulative or prejudicial because it is the sum of the PT instructors' testimony—showing the unanimity of the conclusion at the meeting—that rebuts the Defendants' claims of ignorance or mistake.

Krejsa responds,

> The fact that a group of officers sitting in a conference room, isolated from the activity on the shift or otherwise subject to the pressures of responding to calls on a night shift, with the benefit of high-definition monitors and assistance in setting up the equipment, determined that an incident involving the use of force was well outside the bounds of lawful conduct says little about the issues to be contested at trial. This evidence should be excluded pursuant to Federal Rules of Evidence 401 and 403.

(Filing No. 238 at 1.)

Krejsa argues that evidence from the August 2018 use-of-force review meeting is not relevant to the issues for trial: his knowledge, intent, and motive or lack thereof when he wrote the reports at issue. The view of a group of officers who reviewed video footage at a different time and in a completely different setting says nothing about Krejsa's knowledge, intent, and motive or lack thereof. Furthermore, Krejsa contends, any possible probative value is substantially outweighed by the danger of unfair prejudice, juror confusion, misleading the jury, and wasting time.

The Government's position is persuasive. The proffered evidence is relevant to the issues of intent, knowledge, ignorance, or mistake. Krejsa's argument goes to the weight of the evidence, not admissibility, and he can present such arguments and counter-evidence to the Government's evidence. Of course, if issues of relevance or prejudice arise during trial, Krejsa is free to raise objections in the context of trial. At this stage, the Court **grants** the Government's Motion (Filing No. 221) and preliminarily decides that this evidence will be permitted during trial.

B.     **Filing No. 222: Government's Motion *in Limine* to Exclude Evidence of Civil Lawsuit**

The Government asks the Court to exclude any evidence, reference, or argument about a civil lawsuit filed by the victim unless and until the victim testifies in this criminal trial. The Government argues that evidence about that civil lawsuit, the pleadings in that lawsuit, and the fact that the civil lawsuit ended with a settlement is inadmissible because it is irrelevant, unfairly prejudicial, and could mislead the jury. Additionally, evidence concerning the settlement of the civil lawsuit is inadmissible pursuant to Federal Rule of Evidence 408.

In their response, the Defendants note that they do not oppose this Motion *in Limine*, and in fact, they made the same request to exclude this evidence in their own Motion *in Limine*. The Court agrees with the parties that evidence of the civil lawsuit filed by the victim, the pleadings in that lawsuit, and the fact that the civil lawsuit ended with a settlement is irrelevant and could be unfairly prejudicial and mislead the jury. Therefore, the Court **grants** this Motion (Filing No. 222), and the parties may not present such evidence during trial.

C.     **Filing No. 223: Government's Motion *in Limine* to Exclude Irrelevant and Prejudicial Evidence**

The Government asks the Court to exclude any evidence and testimony about the volume of emergency and non-emergency calls and dispatch assignments within the City of Muncie and Delaware County that took place over a total of approximately eleven weeks. The Government anticipates the Defendants may attempt to introduce evidence of the aggregate volume of calls for police assistance within the City of Muncie and Delaware County in an effort to focus attention on the general working conditions at MPD and to deflect blame from their own misconduct at the time that they wrote the charged false reports. The Government contends this evidence would include information not related to the Defendants, to the night shifts when they worked, or to calls in which the Defendants were involved.

6

The Government argues that this evidence lacks any probative value, and is therefore irrelevant, and it may play on the sympathies of the jury by suggesting that the Defendants were overworked, which could result in jury nullification. The relevance of evidence depends on the existence of another fact—in this case, that the Defendants were aware of unrelated police activity and that such police activity actually affected their job duties at the time that they prepared their reports—and Federal Rule of Evidence 104(b) requires that "'proof must be introduced sufficient to support a finding that the fact does exist.'" *United States v. Gomez*, 763 F.3d 845, 854 (7th Cir. 2014) (quoting Rule 104(b)). The Government seeks the exclusion of any evidence about working conditions or inadequate staffing levels as well as the aggregate number of police calls and dispatch assignments.

Krejsa intends to present evidence to the jury regarding the facts and circumstances of his work environment at and around the times he is alleged to have written or reviewed the reports charged in the Superseding Indictment, and he argues that this evidence is directly relevant and highly probative of his knowledge and intent. He argues the evidence will show he had a remarkably heavy burden as the supervisor of the night shift and that, despite MPD policy, he lacked the appropriate levels of support in managing the shift. Krejsa contends that evidence regarding shift staffing, particularly at the supervisor level, and call volume will establish general working conditions that will otherwise be unfamiliar to the jury. Each call required some level of Krejsa's attention and time, and the evidence showing the volume of calls is critical to Krejsa's defense in showing the jury what other activity took place on the nights in question.

At this pretrial stage, the Government has failed to show that this evidence clearly is not admissible for any purpose. Instead, it appears that the evidence is relevant and likely admissible with the proper foundation being laid during trial. Ruling on this line of evidence must be deferred

until trial so that questions of foundation, relevancy, and prejudice may be resolved in context. Therefore, this Motion *in Limine* (Filing No. 223) is **denied**.

D. **Filing No. 224: Government's Motion *in Limine* to Exclude Evidence of Good Character**

The Government asks the Court to exclude any evidence and testimony about specific prior "good acts" done by the Defendants, including evidence of awards, commendations, or other good performance during the course of their employment with MPD. The Government notes that Rule 404(a) generally prohibits evidence of a person's character to prove that the person acted in conformity with that character on a particular occasion; thus, the Defendants may not offer evidence of their purported good character or past instances of good conduct in order to prove that they engaged in good conduct during the incidents charged in the Superseding Indictment. The fact that the Defendants may be considered "good" police officers is not relevant to whether, on these occasions, they drafted intentionally false reports to cover up the misconduct of their fellow police officers. Furthermore, the Government asks that testimony or documents related to awards or commendations be excluded because it is not in the proper form (*i.e.*, opinion or reputation) for character evidence. The Government requests that the Court hold any defense character witnesses to proper character evidence standards and prohibit testimony that strays outside the bounds of reputation and opinion testimony, and the Court should limit the number of character witnesses to avoid cumulative testimony.

The Defendants respond that they have the right to present to the jury evidence regarding their good character for "law abidingness, truthfulness, and honesty" under Rule 404(a)(2). The Defendants assert,

> One common character trait raised in criminal cases is law abidingness. "Courts have held that the general trait of law abidingness is pertinent to almost all criminal offenses." *United States v. Al Asai*, No. 3:16-CR-00149-01-RGJ, 2018 WL

5816769, *4 (W.D. Ky Nov. 6, 2018) (citing *In re Sealed Case*, 352 F.3d 409, 412 (D.C. Cir. 2001)) . . . .

(Filing No. 242 at 1.) The Defendants continue, "should the government open the door and attach the character of Krejsa or Posey for credibility or truthfulness, Krejsa should be allowed under Federal Rule of Evidence 608(a) to introduce evidence of commendations and other specific instances related to his credibility and truthfulness." *Id.* at 2.

The Government is correct Krejsa may not simply present evidence of his awards and commendations and whether he is a good police officer is not a "pertinent" character trait of the crimes for which he stands accused, so this evidence is not admissible. *See* Federal Rules of Evidence 404, 405(a) and 405 (9). However, at this pretrial stage, the Government has failed to show that "good character" evidence clearly is not admissible for any purpose, so an *in limine* blanket prohibition against such evidence is not warranted. If such evidence is offered at trial, the Court will make a determination as to whether such evidence is admissible. And Krejsa is reminded that if he offers evidence of a pertinent trail--such as his character trait for law-abidingness--and if the evidence is admitted, the prosecutor may offer evidence to rebut it. (*See* Federal Rule of Evidence 404(a)(2)(A)). The parties will be held to the bounds of the Federal Rules of Evidence if they seek to offer such evidence during trial. For now, this Motion *in Limine* (Filing No. 224) is **denied**.

E.     **Filing No. 227: Defendants' Motion *in Limine***

The Defendants' Motion *in Limine* includes numerous requests, which the Court will address in turn.

    **1.**     **Speculative Testimony**

The Defendants argue that the three critical issues to be considered by the jury are knowledge, intent, and motive. They argue that any evidence that is speculative as to these issues

should be excluded by the Court. Specifically, the Defendants argue that testimony concerning what videos and portions of videos they observed would be speculative as no other witness watched the videos with the Defendants. Without a foundation of personal knowledge, other witnesses could only speculate as to what the Defendants actually watched, and speculation is not admissible. Thus, speculation about the Defendants' knowledge should be excluded. Similarly, speculative testimony about the Defendants' intent or motive—such as covering up Winkle's actions so as to not suffer the ire of Winkle's father, the then-Chief of Police—is inadmissible, and the Court should exclude it. No witness has personal knowledge of the Defendants' intent or motive.

    The Government responds that it has no intention of eliciting purely speculative testimony regarding the Defendants' knowledge, intent, or motive; however, it should be permitted to introduce testimony related to knowledge, intent, or motive where a proper foundation is established in accordance with the Rules of Evidence. The Government has no intention of asking witnesses what the Defendants could or could not see on the videos, but the Government does intend to ask, and witnesses should be permitted to testify about, what the witnesses themselves could and could not see, hear, and understand based on their own viewing of the relevant videos. The Defendants' own statements related to what they observed also are admissible. And the Government explains it has no intention of asking witnesses to abstractly speculate as to why the Defendants wrote false reports.

    This Motion *in Limine* request is **granted in part and denied in part**. To the extent the Defendants' request can be understood to exclude any and all evidence concerning the Defendants' knowledge, intent, and motive, the request is **denied**. Such issues are relevant and central to the charges the Government must prove, and, thus, the Government may present evidence to meet its

burden of proof. However, the request is **granted** in that testimony will not be permitted unless a proper foundation of personal knowledge is established—purely speculative testimony will not be permitted.

      2.     **Evidence Not Observed by or Known to Defendants**

Next, the Defendants argue that the Government should be prohibited from showing any evidence that it cannot establish that the Defendants themselves observed or reviewed at the time they reviewed or authored the use of force reports at issue. Additionally, the Government should be prohibited from presenting the evidence that the Defendants did review in a manner that shows the use of force in a way that does not accurately reflect how the Defendants saw the evidence at the time they reviewed the evidence or wrote the reports at issue.

The Government contends the fact the Defendants may not have reviewed some evidence—or may have reviewed certain evidence in a manner that differs from how it will be presented at trial—goes to the weight, not the admissibility of the evidence, and the Defendants' motion to exclude on such grounds should be denied. These are matters to be addressed by cross-examination and presentation of other evidence, not by exclusion of the evidence. The Government's position is well-taken that the Defendants' argument goes to weight rather than admissibility and can be addressed through cross-examination. Defendants have failed to show that this broad category of evidence clearly is not admissible for any purpose, so this *in limine* request is **denied**.

      3.     **Other Civil Litigation**

The Defendants ask the Court to exclude any evidence about civil lawsuits filed against them, and the Government filed a similar motion *in limine*, which the Court addressed and granted above. This *in limine* request is **granted**.

11

### 4. Statements Sought to be Admitted under Rule 801(d)(2)(E)

The Defendants assert that non-hearsay statements of witnesses who do not testify at trial may be offered under Federal Rule of Evidence 801(d)(2)(E) against a defendant if the statement was made by the defendant's "coconspirator during and in the furtherance of the conspiracy." However, the Defendants are not alleged to have participated in a conspiracy, and the underlying Superseding Indictment does not contain a conspiracy-related charge. Additionally, the Government has not made a "Santiago proffer" to substantiate any allegations of the same. Therefore, under Rules 801 and 802 and *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), the Defendants ask the Court to prohibit the Government from introducing any statements pursuant to Rule 801(d)(2)(E).

The Government responds that, at this point in time, it does not intend to present any co-conspirator statements; however, it is well-established that the Government does not have to charge a conspiracy in order to admit statements under Rule 801(d)(2)(E). *See United States v. Godinez*, 110 F.3d 448, 454 (7th Cir. 1997); *United States v. Reynolds*, 919 F.2d 435, 439 (7th Cir. 1990). Therefore, this non-specific request should be denied.

Again, the Government's position is well-taken. A conspiracy does not have to be charged in an indictment to be able to admit statements under Rule 801(d)(2)(E), and a "Santiago proffer" is a method by which the Government may, pretrial, obtain the conditional admission of a co-conspirator's statement. The Defendants have failed to show that this non-specific, broad category of evidence clearly is not admissible for any purpose, so this *in limine* request is **denied**.

### 5. "Dual Role" Testimony

In its Notice of Expert Testimony, the Government indicated its intent to produce "lay opinion" testimony from several officers including Sgt. Daxton Lovell, Sgt. Brent Brown, Sgt.

Ryan Winningham, Officer Christopher Deegan, Officer Kyle Temple, Officer Tyler Swain, Officer Matthew Hollans, and Officer Keith Benbow. (Filing No. 211 at 4-5.) The Government also indicated that it believed such testimony should be characterized as "lay opinion" testimony pursuant to Rule 701, but if the testimony was considered expert testimony rather than "lay opinion" testimony, it could provide each witness' qualifications to qualify them as an expert witness based upon their respective experience and/or expertise.

The Defendants contend that the anticipated testimony described in the Government's Notice is based upon each witness' technical or specialized knowledge and is therefore within the scope of expert witness testimony. However, the Government will also seek to elicit at trial fact testimony from the specific law enforcement witnesses identified in the Notice.

The Defendants argue,

> To the extent any of those witnesses are qualified as expert witnesses, they should be forbidden from testifying as a fact witness while simultaneously testifying as an expert witness without clearly delineating the different foundations for each. Any "dual testimony" should be structured in a manner to assure that the jury is clearly informed of the distinction between portions of a witness' testimony that constitute factual testimony, if any, and testimony that constitutes expert testimony.

(Filing No. 227 at 8–9.)

> [C]onsistent with the procedure outlined in *Jett*, Krejsa and Posey urge the Court to direct the Government to introduce such testimony as follows:
>
> > When the expert portion of the witness's testimony begins, the district judge should allow the government to lay its foundation and establish the agent's qualifications. After it does, the district judge should instruct the jury that the testimony it is about to hear is the witness's opinion based on training and experience, not firsthand knowledge, and that it is for the jury to determine how much weight, if any, to give that opinion.

*Id.* at 269-270.

> To the extent the Court allows any expert testimony from the Government in this trial, Posey and Krejsa respectfully request that the Court follow the process outlined in *Jett* for handling dual-role testimony.

(Filing No. 227 at 9–10.)

In response, the Government explains,

> The defendant asserts that the opinion testimony the government may seek from the physical tactics instructors identified [in] the government's Notice Regarding Expert Testimony, ECF 211, is "quite clearly" expert testimony. MIL at 8. The defendant further acknowledges that the government also intends to elicit fact testimony from some or all of these witnesses. Given this potential "dual role" assumed by these witnesses, the defendant requests that for any witness providing both expert and fact testimony, the government and the Court follow the procedures set forth by the Seventh Circuit for properly delineating such testimony. For reasons that will be more fully set forth in additional briefing related to expert versus lay opinion testimony, the government maintains its position that the proposed testimony from the individuals identified in the government's Notice is not actually expert testimony, but is instead lay opinion testimony based on the job qualifications, firsthand experience, and duties of the officers. However, in the event that the Court rules that this proposed testimony *is* expert testimony, the government – as already stated in the government's Notice – has no objection to following the process for handling dual role testimony set forth by the Seventh Circuit in *United States v. Tingle*, 880 F.3d 850, 854 (7th Cir. 2018) and *United States v. Jett*, 908 F.3d 252, 269-70 (7th Cir. 2018).

(Filing No. 239 at 12.)

The parties agree that to the extent that any witness provides "dual role" testimony during trial, the Court and the parties will follow the procedure set forth in *United States v. Jett*, 908 F.3d 252 (7th Cir. 2018). Accordingly, the Court **grants** this *in limine* request.

### 6. Evidence of co-Defendant Winkle's Prior Arrest

Co-Defendant Winkle has a prior arrest from approximately ten years ago before he was an officer with MPD. He was arrested on charges involving domestic assault and was charged with misdemeanor resisting law enforcement. The case files were destroyed in 2016 after a judgment was entered on June 11, 2014, and after the State of Indiana filed an agreement to

withhold prosecution. The Defendants argue that evidence of Winkle's prior arrest is not relevant to the issues in this case, and it would be highly prejudicial.

The Government "does not plan to introduce evidence related to this incident unless or until the defendant opens the door and makes such evidence relevant." (Filing No. 239 at 13.) The Government continues,

> There are numerous ways the defendant could open the door to this incident – for example, if the defendant were to claim that he had no personal knowledge of Officer Winkle acting violently or receiving special treatment by the Department; or if Winkle testifies and the defense crosses him about this prior incident. However, if the defendant does not open the door, the government has no intention of independently raising this incident or evidence thereof.

*Id.*

The Court **grants in part and denies in part** this request. Evidence of Winkle's prior arrest from approximately ten years ago is irrelevant to the issues at trial and, thus, will be excluded on that basis. However, if the Defendants open the door and make such evidence relevant, the Government may present this evidence during trial.

### 7. Evidence of Other Crimes, Wrongs, or Acts of Posey

The Defendants assert that evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character, and this general rule is subject to certain exceptions, but only if the Government provides "reasonable notice of the same." The Government filed its Notice of Other Act Evidence, and in its 404(b) Notice, the Government provided notice of its intent to introduce evidence under Rule 404(b) against Krejsa. The Government has not provided any such notice regarding Posey, thus Posey argues the Government should be prohibited from introducing any 404(b) evidence against him during the trial in this matter.

15

The Government responds that "[t]he defense motion to exclude other crimes, wrongs, or acts by Defendant Posey is now moot, in light of the Court's recent order severing Posey from this case." (Filing No. 239 at 13.) Because Posey's trial has been severed from Krejsa's trial and will be held on a later date, this *in limine* request is **denied as moot**.

### IV. CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** the parties' Motions *in Limine* (Filing No. 221; Filing No. 222; Filing No. 223; Filing No. 224; Filing No. 227). An order in *limine* is not a final, appealable order. If the parties believe that evidence excluded by this Order becomes relevant or otherwise admissible during the course of the trial, counsel may request a hearing outside the presence of the jury. Likewise, if the parties believe that specific evidence is inadmissible during the course of the trial, counsel may raise specific objections to that evidence.

**SO ORDERED.**

Date: 12/20/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Peter A. Blackett
UNITED STATES ATTORNEY'S OFFICE
peter.blackett@usdoj.gov

Jonathan A. Bont
FROST BROWN TODD LLC
jbont@fbtlaw.com

Joshua James Burress
DENTONS BINGHAM GREENEBAUM
joshua.burress@dentons.com

K. Michael Gaerte
DENTONS BINGHAM GREENEBAUM
michael.gaerte@dentons.com

Nicholas J. Linder
UNITED STATES ATTORNEY'S OFFICE
nick.linder@usdoj.gov

Erica MacDonald
FEAGRE DRINKER BIDDLE & REATH
erica.macdonald@faegredrinker.com

Katherine Gray DeVar
DOJ-Crt
katherine.devar@usdoj.gov

Lauren I. Doyle
MARKUS MOSS PLLC
ldoyle@markuslaw.com

Mary J. Hahn
DOJ-Crt
mary.hahn@usdoj.gov

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN
BLACKWELL BEMIS DUNCAN &
MERCHANT
ard@rkblegalgroup.com

David Oscar Markus
MARKUS MOSS PLLC
dmarkus@markuslaw.com

Daniel E. Pulliam
FEAGRE DRINKER BIDDLE & REATH
daniel.pulliam@faegredrinker.com

Jason Rauch
FEAGRE DRINKER BIDDLE & REATH
jason.rauch@faegredrinker.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN
BLACKWELL BEMIS DUNCAN &
MERCHANT
jfk@rkblegalgroup.com