UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-cr-00094-TWP-TAB |
| ) | |
| JOSEPH KREJSA, and ) | -03 |
| COREY POSEY, ) | -04 |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION TO EXCLUDE
GOVERNMENT'S RULE 404(B) EVIDENCE**

This matter is before the Court on a Motion to Exclude the Government's Rule 404(b) Evidence filed by Defendants Joseph Krejsa ("Krejsa") and Corey Posey ("Posey") (collectively, "Defendants") (Filing No. 226). The seventeen-count Superseding Indictment in this criminal matter charges Krejsa with two counts of false report (Counts Five and Eight) and Posey with one count of false report (Count Four) in violation of 18 U.S.C. § 1519 (Filing No. 64). The other fourteen counts in the Superseding Indictment relate to co-Defendants Joseph Chase Winkle ("Winkle") and Jeremy Gibson ("Gibson"), who have pled guilty to the charges against them, leaving Krejsa and Posey as the remaining defendants to be tried. In their Motion, the Defendants ask the Court to exclude the Government's proffered Rule 404(b) evidence. For the following reasons, the Motion is **denied**.

**I.     BACKGROUND**

This case involves six separate incidents in which Muncie Police Department ("MPD") officers used excessive force and/or wrote false reports about those uses of force, occurring between March 2018 and February 2019. Winkle, Posey, and Gibson were employed as officers

with MPD, and Krejsa was employed as a sergeant with MPD. On March 11, 2020, a federal grand jury returned a twelve-count Indictment arising from five separate incidents involving Winkle, Krejsa, and Gibson (Filing No. 1).

More than a year later, on April 13, 2021, the grand jury returned the seventeen-count Superseding Indictment, adding a sixth incident and adding Defendant Posey (Filing No. 64). The lead Counts (Counts One through Five) involve the conduct of all four Defendants in connection with the arrest of L.G. on August 9, 2018. Specifically, during the arrest of L.G., Winkle is charged with using his knee to strike L.G.'s head and neck, and Gibson is charged with stomping on and using knee strikes against L.G.'s head, all without legal justification. Count One alleges that Winkle used unreasonable force during the arrest of L.G. in violation of 18 U.S.C. § 242. Count Two alleges that Gibson used unreasonable force during the arrest of L.G. in violation of 18 U.S.C. § 242. Counts Three, Four, and Five allege that Winkle, Posey, and Krejsa, respectively, wrote false reports about this incident in violation of 18 U.S.C. § 1519. The remaining Counts (Counts Six through Seventeen) do not allege or charge Posey with any illegal conduct, nor do those Counts contain any allegations about Posey. Count Eight alleges that Krejsa wrote a false report, in violation of 18 U.S.C. § 1519, about a separate incident that occurred more than two months earlier. That earlier incident occurred on June 5, 2018, wherein Winkle used similar unreasonable force against N.B. and R.F. during their arrest.

## II.     LEGAL STANDARD

In determining whether Rule 404(b) evidence should be admitted, courts in the Seventh Circuit previously have considered whether:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant

committed the similar act, and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice.

*United States v. Vaughn*, 267 F.3d 653, 658 (7th Cir. 2001) (quoting *United States v. Gibson*, 170 F.3d 673, 678 (7th Cir. 1999)). However, in *United States v. Gomez*, 763 F.3d 845, 853 (7th Cir. 2014) (en banc), the Seventh Circuit explained "Our four-part test for evaluating the admissibility of other-act evidence has ceased to be useful. We now abandon it in favor of a more straightforward rules-based approach. This change is less a substantive modification than a shift in paradigm . . . ." This "rule-based approach" requires the proponent of the evidence to "establish that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *Id.* at 860. Then the court must assess whether the probative value of the evidence substantially outweighs the risk of unfair prejudice. *Id.*

### III. DISCUSSION

The Superseding Indictment charges Krejsa with writing false reports, in violation of 18 U.S.C. § 1519, regarding the use of unreasonable force against arrestees N.B. and R.F. on June 5, 2018, and against arrestee L.G. on August 9, 2018. In preparation for trial, the Government filed its Notice of Other Act Evidence ("Rule 404(b) evidence") and indicated that it intends to present evidence at trial about an earlier similar incident on May 13, 2018, when Officers Winkle and Gibson used unreasonable force against arrestee E.M., resulting in facial and other injuries to E.M., and Krejsa subsequently wrote a false report about this use of force by Winkle and Gibson.

The Government asserts that this Rule 404(b) evidence will tend to prove that Krejsa acted with the requisite motive, intent, knowledge, absence of mistake, and lack of accident for the charged acts.

> Krejsa's false report to cover up for Officers Winkle and Gibson's unlawful uses of force against E.M. provides strong evidence that when he submitted a similar in-depth memorandum reviewing the L.G. incident—which happened just a three

3

>months after the arrest of E.M.; implicated the same two officers from his unit, including the then-chief's son; and resulted in similar injury to the arrestee, i.e., fractured facial bones—Krejsa did so knowingly and with the intent to impede the investigation into those officers' excessive uses of force.

(Filing No. 212 at 7.) The Government will ask for a "limiting instruction informing the jury that it may consider this evidence only to the extent that it sheds light on the motive, intent, knowledge, absence of mistake, and lack of accident of Defendant Krejsa, and that they may not hold this defendant accountable for the abuses by other officers." *Id.* at 9.

In the Defendants Motion to Exclude Government's Rule 404(b) Evidence they assert,

>The government has been investigating this matter for years and made the decision to charge Mr. Krejsa with two counts of False Report related to the arrest of L.G. in August 2018 (Count 5) and N.B. and R.F. in June 2018 (Count 8). Based on their lengthy investigation, the government chose not to charge him based on the events surrounding the arrest of E.M. in May 2018.

(Filing No. 226 at 1.) The Defendants seek exclusion of the third uncharged incident arguing that this evidence is irrelevant, unfairly prejudicial, confusing and misleading to the jury, and will cause undue delay and waste time.

The Defendants point out that the events surrounding the arrest of E.M. in May 2018 were part of the grand jury's investigation. Four of the Counts against Winkle and Gibson in the Superseding Indictment concern E.M.'s arrest, yet Krejsa was not charged with anything related to E.M.'s arrest. Multiple videos of the events of E.M.'s arrest were created by body-worn cameras. The Defendants assert that the video captured by "Officer Osborn" provided the best view of most of the incident. Yet, the evidence indicates that Krejsa did not watch Officer Osborn's video before or at the time he drafted his report of the E.M. incident. In making his report, Krejsa reviewed the reports of the officers involved and the video footage from the remaining body cameras, but none of those videos show the incident with any clarity.

The Defendants argue,

4

> The government should be precluded from introducing evidence of this uncharged conduct. The government chose not to indict Mr. Krejsa on this incident, presumably because it would not be able to prove guilt by proof beyond a reasonable doubt as to this incident. It should not now be permitted to bootstrap this evidence to the evidence on the other counts at this late stage. The evidence should be excluded under both a Rule 404(b) analysis as well as a Rule 403 analysis.

*Id.* at 4. Under Rule 404(b), the proffered evidence is nothing more than impermissible propensity evidence to show that Krejsa acted on a particular occasion in accordance with his character, and this evidence creates a high risk of unfair prejudice. The Defendants argue that the Government cannot establish a propensity-free chain of reasoning showing that the Rule 404(b) evidence is probative for a permissible purpose.

The Defendants further argue that the Rule 404(b) Notice raises other acts that are not similar enough to be relevant to the acts charged against Krejsa. The Notice focuses more on the acts committed by Gibson whereas the charges in the Superseding Indictment focus on the acts committed by Winkle and Krejsa's review of those acts. Yet, there is no indication about a motive to falsify information about Gibson whereas motive to falsify information about Winkle is tied to him being the son of the chief of police. The Defendants argue motive and intent are not addressed by this evidence. They also contend that the evidence is insufficient for the jury to find Krejsa knowingly submitted a false report or intended to impede an investigation into the May 2018 incident. The Rule 404(b) evidence would inflame, confuse, and mislead the jury and unfairly prejudice Krejsa. It also would cause undue delay and waste time.

The Government responds that the evidence of the E.M. incident has non-propensity purposes, and, thus, it is admissible under Rule 404(b). The Government will not offer the evidence for propensity purposes but rather for the purpose of showing knowledge, intent, absence of mistake, and lack of accident.

The Government contends that Krejsa's review of the May 2018 E.M. incident put him on notice of the ongoing problem of Winkle using unnecessary force during arrests well before the L.G. incident on August 9, 2019, and before the N.B. and R.F. incident on June 5, 2018. The E.M. incident is a clear example of one of the incidents that established this knowledge, and it demonstrates that Krejsa had the knowledge at the time he wrote the false reports in this case.

The Seventh Circuit has held that where a crime requires proof of specific intent, the defendant's intent is automatically an issue in the case and subject to proof through Rule 404(b) evidence. *United States v. Gellene*, 182 F.3d 578, 595 (7th Cir. 1999). The Government notes that the issue of whether Krejsa intended to write a false and misleading report is central to the case, and evidence of the E.M. incident has a tendency to show Krejsa's specific intent to obstruct justice by lying in his reports about the L.G. incident and N.B. and R.F. incident. The Government asserts,

> Here, following the E.M. arrest, the defendant wrote a lengthy, misleading report that cleared the excessive uses of force by officers under his supervision, concluding that the uses of force were "within policy". This is the exact same conduct for which the defendant is charged in Count 5, and is similar to the conduct for which he is charged in Count 8. This evidence is therefore highly probative of the defendant's intent to cover up for other MPD officers – specifically, Chase Winkle and Jeremy Gibson – and should be admitted for that purpose.

([Filing No. 247 at 7](#)–8.)

The Government further asserts,

> Here, the defendant's knowledge that Officer Winkle had used unreasonable force on a previous occasion during an arrest that resulted in significant injury to the arrestee, and the defendant's submission of a report finding that Winkle's admittedly-unreasonable use of force on that occasion was "justified", offers strong evidence that, when the defendant wrote his false report related to the L.G. incident, he did so with intent to cover up for Winkle. Stated differently, the fact that the defendant knew that Officer Winkle had a tendency to use unjustified force during arrests, and the fact that the defendant had excused that unjustified use of force, makes it significantly less likely that the defendant somehow just failed to notice Winkle's egregious use of force during the L.G. incident. The defendant's knowledge of Winkle's repeated use of excessive force prior to the L.G. incident also undermines the defendant's claim that, during his review of the L.G. incident,

6

> he simply gave officers the benefit of the doubt, because he would have been on notice at that point that Officer Winkle did not warrant the benefit of that doubt.

*Id.* at 8.

As to a lack of mistake or accident, the Government argues the evidence of the E.M. incident is relevant because it demonstrates that Krejsa was not simply mistaken and was not acting by accident when he falsely concluded Winkle's uses of unreasonable force in the charged incidents were justified. Evidence of the E.M. incident, which shows Krejsa's knowledge of Winkle's misconduct and Krejsa's knowledge of MPD's prior request for scrutiny of such misconduct, is admissible to establish that Krejsa did not make a mistake when writing his detailed report, and the evidence shows that it is improbable that the falsities contained in his report were mere accidents. By the time of the L.G. incident and the N.B. and R.F. incident, Krejsa was well aware of and had previously covered for Winkle's ongoing use of excessive force—evidenced by the E.M. incident.

The Government concludes that the evidence of the May 2018 E.M. incident is highly probative for multiple proper purposes that are at the heart of this case—specifically, to prove Krejsa's knowledge, intent, and absence of mistake or accident—and the evidence is recent and remarkably similar to the charged conduct making it all the more relevant.

Regarding the sufficiency of the evidence of the other act evidence, the Government notes that the standard is simply enough evidence to support the jury finding that a defendant committed the other act. *See United States v. Burke*, 425 F.3d 400, 410 (7th Cir. 2005). And the Government contends that it can easily satisfy this standard.

> The evidence will demonstrate that the defendant watched specific videos related to this incident, which show, among other things, Officer Gibson repeatedly punching E.M.'s head; Officer Winkle repeatedly jabbing an asp baton into E.M.'s side; and Gibson delivering at least one knee strike to E.M.'s head or upper body. Notably, like Winkle, Officer Gibson has pled guilty and admitted that these uses

7

of force were unreasonable. The defendant also arrived on scene following the incident and spoke with the involved officers, including specific discussions related to the officers' use of force. He was also aware, due to his position and involvement, that E.M. suffered serious injuries and was sent to the hospital. Finally, the defendant had access to the written reports filed by the officers involved in this incident, including the reports by officers Winkle and Gibson.

(Filing No. 247 at 11.)

Rule 403 gives courts discretion to exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, which means that Rule 403 "exclud[es] other-act evidence that may be slightly probative through a non-propensity theory but has a high likelihood of creating unfair prejudice." *Gomez*, 763 F.3d at 857. The Government contends that all probative evidence is prejudicial in that it helps establish a defendant's guilt; thus, the question is whether the prejudice is undue or unfair. And the more probative the evidence, the more likely courts will tolerate a risk of prejudice. *United States v. Menzer*, 29 F.3d 1223, 1234 (7th Cir. 1994).

The Government concludes,

> Here, the defendant argues that several things are unfairly prejudicial – such as the violence in the E.M. video and the colorful language used by the officers. ECF 226 at 9-13. However, the defendant is neither the person using force against E.M. or the person using colorful language. It is difficult to comprehend how the bad conduct of other officers could unduly prejudice the defendant. Moreover, the Court can give a limiting instruction to the jury to cure any conceivable prejudice. "Appropriate jury instructions may help reduce the risk of unfair prejudice inherent in other-act evidence." *Gomez*, 763 F.3d at 860 (citing *United States v. Carter*, 695 F.3d 690, 702 (7th Cir. 2012)); Fed. R. Evid. 403 advisory committee's notes (1972)). The Court should take this path instead of excluding this probative evidence.

(Filing No. 247 at 14.)

In reply, Krejsa argues that the Government's Rule 404(b) evidence says nothing about his knowledge or intent or any lack of mistake or accident. Rather, the evidence shows that there was a propensity for Krejsa's subordinates to lie on their reports, and Krejsa did not have the time,

8

technology, or capacity to catch those lies and the abuses of arrestees as early as the Government believes he should have.

As the Seventh Circuit explained in *Gomez*, in determining whether to admit other-act evidence, the district court must assess whether the probative value of the evidence substantially outweighs the risk of any unfair prejudice after "the proponent of the evidence [] first establish[es] that the other act is relevant to a specific purpose other than the person's character or propensity to behave in a certain way." *Gomez*, 763 F.3d at 860.

> The extent to which a proffered "other crime, wrong, or act" is close in time and similar to the conduct at issue in the case *may* have a bearing on its relevance, which is the starting point for all evidence questions, but the importance of testing for similarity and recency will depend on the specific purpose for which the other-act evidence is offered.

*Id.* at 855.

Here, the Government has established that the evidence concerning the May 2018 E.M. incident is highly relevant to and probative of Krejsa's knowledge, intent, and absence of mistake or accident at the time he committed the acts charged in the Superseding Indictment. Krejsa's involvement with the review and reporting of the E.M. incident has a tendency to make the facts about his knowledge, intent, and absence of mistake or accident surrounding the N.B. and R.F. incident and the L.G. incident more or less probable. Krejsa had been tasked by the unit captain to do an in-depth review of the use of force, and the May 2018 E.M. incident occurred only two months before the N.B. and R.F. incident, and the L.G. incident occurred only two months after the N.B. and R.F. incident. Each of these incidents is nearly identical to each other—involving Krejsa, Winkle, and Gibson, with arrestees receiving serious bodily injury to the face and head, and false reports being generated thereafter.

This evidence is sufficient for a jury to conclude that Krejsa did commit the "other act": Krejsa viewed video footage (other than the Officer Osborn video) of the E.M. incident, he went to the scene following the incident and spoke with the involved officers about their use of force, he knew that E.M. suffered serious injuries and was sent to the hospital, and he had access to the written reports filed by the officers involved in this incident, including the reports by Winkle and Gibson, and Krejsa wrote a false and misleading report about the E.M. incident.

Krejsa raises the concern that unfair prejudice will result from the other-act evidence because it could inflame the jury against him seeing gruesome videos and images, and it could lead the jury to conclude he had such a propensity. He also argues such evidence would waste time and cause delay. However, the Court finds that such evidence is not a waste of time and will not cause an undue delay. The Government must prove Krejsa's knowledge and intent, so the Government is entitled to take time to prove this element, and this other-act evidence is directly relevant to this necessary element of the charged crime. Given the nature of the charges in the Superseding Indictment, the jury will be exposed to other gruesome videos and images of the two charged incidents, so some additional similar evidence of the third incident is not likely to inflame the jury any more than what possibly could arise from the evidence of the two charged incidents. Moreover, a proper limiting instruction will help alleviate this concern of potential prejudice.

There are numerous proper purposes for this evidence. The potential that the jury might view it as propensity evidence is minimal and a limiting instruction can cure this potential issue. The probative value of the other-act evidence is very high regarding Krejsa's knowledge, intent, and absence of mistake or accident (which is a central issue for trial). The Government has established that the other act is relevant to a specific purpose other than Krejsa's character or

propensity to behave in a certain way. Having assessed the probative value of the evidence, the Court finds that its probative value substantially outweighs the risk of any unfair prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Defendants' Motion to Exclude the Government's Rule 404(b) Evidence (Filing No. 226). The evidence regarding the May 2018 E.M. incident, of which the Government has provided notice, may be offered at trial. Defendant Krejsa shall docket and email to the Courtroom Deputy Clerk, a proposed limiting instruction by no later than **Friday**, **January 6, 2023**. During trial, at the Defendants' request, the Court will give the limiting instruction regarding this other-act evidence.

SO ORDERED.

Date: 12/21/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Peter A. Blackett
UNITED STATES ATTORNEY'S OFFICE
peter.blackett@usdoj.gov

Jonathan A. Bont
Frost Brown Todd LLC
jbont@fbtlaw.com

Joshua James Burress
DENTONS BINGHAM GREENEBAUM
joshua.burress@dentons.com

Katherine Gray DeVar
DOJ-Crt
katherine.devar@usdoj.gov

Lauren I. Doyle
MARKUS/MOSS PLLC
ldoyle@markuslaw.com

K. Michael Gaerte
DENTONS BINGHAM GREENEBAUM
michael.gaerte@dentons.com

Nicholas J. Linder
UNITED STATES ATTORNEY'S OFFICE
nick.linder@usdoj.gov

Erica MacDonald
FEAGRE DRINKER BIDDLE & REATH
erica.macdonald@faegredrinker.com

David Oscar Markus
MARKUS/MOSS PLLC
dmarkus@markuslaw.com

Daniel E. Pulliam
FEAGRE DRINKER BIDDLE & REATH
daniel.pulliam@faegredrinker.com

| | |
|---|---|
| Mary J. Hahn<br>DOJ-Crt<br>mary.hahn@usdoj.gov | Jason Rauch<br>FEAGRE DRINKER BIDDLE & REATH<br>jason.rauch@faegredrinker.com |
| Andrew R. Duncan<br>RUCKELSHAUS KAUTZMAN<br>BLACKWELL BEMIS DUNCAN &<br>MERCHANT<br>ard@rkblegalgroup.com | John F. Kautzman<br>RUCKELSHAUS KAUTZMAN<br>BLACKWELL BEMIS DUNCAN &<br>MERCHANT<br>jfk@rkblegalgroup.com |