UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:20-cr-00094-TWP-TAB |
| ) | |
| JOSEPH KREJSA, and ) | -03 |
| COREY POSEY, ) | -04 |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION TO EXCLUDE
EXPERT TESTIMONY**

This matter is before the Court on a Motion to Exclude Expert Testimony filed by Defendants Joseph Krejsa ("Krejsa") and Corey Posey ("Posey") (collectively, "Defendants") (Filing No. 236). The seventeen-count Superseding Indictment in this criminal matter charges Krejsa with two counts of False Report (Counts Five and Eight) and Posey with one count of False Report (Count Four) in violation of 18 U.S.C. § 1519 (Filing No. 64). The other fourteen counts in the Superseding Indictment relate to co-Defendants Joseph Chase Winkle ("Winkle") and Jeremy Gibson ("Gibson"), who have pled guilty to the charges against them, leaving Krejsa and Posey as the remaining defendants to be tried. In their Motion, the Defendants ask the Court to exclude purported expert testimony that will be proffered by the Government. For the following reasons, the Motion is **denied**.

I.      **BACKGROUND**

This case involves six separate incidents in which Muncie (Indiana) Police Department ("MPD") officers used excessive force and/or wrote false reports about those uses of force, occurring between March 2018 and February 2019. Winkle, Posey, and Gibson were employed

as officers with MPD, and Krejsa was employed as a sergeant with MPD. On March 11, 2020, a federal grand jury returned a twelve-count Indictment arising from five separate incidents involving Winkle, Krejsa, and Gibson (Filing No. 1).

More than a year later, on April 13, 2021, the grand jury returned the seventeen-count Superseding Indictment, adding a sixth incident and adding Defendant Posey (Filing No. 64). The lead counts (Counts One through Five) involve the conduct of all four Defendants in connection with the arrest of L.G. on August 9, 2018. Specifically, during the arrest of L.G., Winkle is charged with using his knee to strike L.G.'s head and neck, and Gibson is charged with stomping on and using knee strikes against L.G.'s head, all without legal justification. Count One alleges that Winkle used unreasonable force during the arrest of L.G. in violation of 18 U.S.C. § 242. Count Two alleges that Gibson used unreasonable force during the arrest of L.G. in violation of 18 U.S.C. § 242. Counts Three, Four, and Five allege that Winkle, Posey, and Krejsa, respectively, wrote false reports about this incident in violation of 18 U.S.C. § 1519. The remaining counts (Counts Six through Seventeen) do not allege or charge Posey with any illegal conduct, nor do those counts contain any allegations about Posey. Count Eight alleges that Krejsa wrote a false report, in violation of 18 U.S.C. § 1519, about a separate incident that occurred more than two months earlier. That earlier incident occurred on June 5, 2018, wherein Winkle used similar unreasonable force against N.B. and R.F. during their arrest.

## II.   LEGAL STANDARD

Regarding the Government's expert witness disclosures in a criminal matter, the Federal Rules of Criminal Procedure provide,

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. If the government requests discovery under subdivision (b)(1)(C)(ii) and the

>defendant complies, the government must, at the defendant's request, give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial on the issue of the defendant's mental condition. The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G).

Rule 16(a)(1)(G) "requires the government to provide a 'written summary' of the expert testimony it intends to introduce, and the government cannot satisfy that obligation by merely providing a 'list of topics.'" *United States v. Williams*, 900 F.3d 486, 488–89 (7th Cir. 2018) (quoting *United States v. Duvall*, 272 F.3d 825, 828–29 (7th Cir. 2001)). "To help the defendant prepare for trial, the disclosure must summarize what the expert will actually say about those topics." *Id.* at 489.

>Rule 701 provides that "a witness who is not an expert may offer an opinion when it is: '(a) rationally based in the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *United States v. Mendiola*, 707 F.3d 735, 741 (7th Cir. 2013), quoting Fed. R. Evid. 701. Where testimony is based on specialized knowledge within the scope of Rule 702, it has to comply with some safeguards of expert testimony, which include a requirement that such testimony be disclosed to the defendant prior to trial. *See United States v. York*, 572 F.3d 415, 421 (7th Cir. 2009); Fed. R. Crim. P. 16(a)(1)(G). Therefore, the initial question is whether the testimony crossed the line to expert testimony.

*United States v. Jones*, 739 F.3d 364, 368 (7th Cir. 2014).

### III.   DISCUSSION

The Superseding Indictment charges the Defendants with writing false reports, in violation of 18 U.S.C. § 1519, regarding the use of unreasonable force against arrestee L.G. on August 9, 2018, with an additional charge of false report against Krejsa involving an incident with arrestees N.B. and R.F. on June 5, 2018. In preparation for trial, the Government filed a Notice of Expert Testimony (Filing No. 211) and indicated that it intends to call as witnesses several law

3

enforcement officials and a "video specialist" to help prove the charges against the Defendants. In its Notice, the Government asserts that these witnesses will provide fact and lay opinion testimony; however, out of an abundance of caution, the Government provides its expert witness notice in the event such testimony is considered expert testimony.

The Government explains,

> [It] expects to call as witnesses several experienced MPD officers to testify about, among other topics, MPD's use of force policies and the training provided to all MPD officers, including the defendants. These experienced officers will also offer their opinions regarding whether the uses of force by Winkle – which were captured on video and were the subject of defendants Krejsa and Posey's false reports – were consistent or inconsistent with departmental policies and training. This evidence helps to establish the defendants' knowledge and awareness of the underlying misconduct they are charged with obstructing.

(Filing No. 211 at 2.)

> The government respectfully submits that this portion of the proposed testimony qualifies as lay-opinion testimony under FRE 701, rather than expert testimony under FRE 702, because it addresses the training actually provided to the defendants, and asks for the instructing officer's personal opinion about whether a particular use of force they viewed comports with that training; it does not require the trainer to offer an opinion on the force based on his expertise or experience in the field of use of force.

*Id.* at 6.

The Government further explains additional testimony that it will elicit from the law enforcement officials:

> In addition to eliciting testimony about the use of force policy and training testimony, the government also intends to elicit testimony about an August 28, 2018 meeting, during which six of the eight PT instructors identified in this notice (Sgt. Lovell, Sgt. Brown, Sgt. Swain, Ofc. Temple, Ofc. Hollans, Ofc. Benbow) gathered at the request of MPD leadership to watch the body camera video of the arrests of L.G. and E.M., and analyze the propriety of the uses of force during those incidents.
>
> At this meeting, the instructors, upon viewing the video of the L.G. incident, unanimously concluded that multiple uses of force by Officers Winkle and Gibson during that arrest were clearly unjustified under the circumstances and contrary to MPD policy and training. During the same meeting, upon viewing video footage of

4

> the arrest of E.M., all of the instructors similarly concluded that several uses of force by Officers Winkle and Gibson during that arrest were also unjustified and contrary to MPD policy and training. All of the PT instructors present at this meeting were trained the same way, and familiar with the same policies as, Defendants Krejsa and Posey. Accordingly, the fact that all of the instructors readily and easily concluded that these uses of force were contrary to MPD policy and training is relevant to show that any similarly-trained MPD officer – including the defendants – would similarly recognize the conduct as contrary to MPD policy and training.

*Id.* at 7.

> The Government also
>
> anticipates introducing testimony from a video specialist, in relation to video evidence from MPD officers' Axon body cameras, and corresponding audit logs that document, among other things, information such as how many times a particular video was accessed and streamed, when, and by whom. The government anticipates calling this specialist to explain the basics of how the body camera devices work, and how the relevant data is captured and reflected in the audit logs. The government also believes that this testimony constitutes lay, rather than expert, testimony, as it will primarily be a straightforward description of the company's body camera system and how it records data, which does not require technical expertise to understand.

*Id.* at 3.

After the Government filed its Notice of Expert Testimony, the Defendants move to exclude the expert testimony. They argue,

> In an effort to evade [Rule 16(a)(1)(G)'s] requirements, the Government has attempted to identify its experts as lay witnesses. Moreover, the Government's expert disclosures fell woefully short of describing each expert opinion and the bases and reasons for those opinions. . . . Mr. Krejsa and Mr. Posey respectfully request that the Court prohibit the individuals identified in the Government's Notice from providing expert testimony/opinions during the forthcoming trials in this matter.

([Filing No. 236 at 2](Filing No. 236 at 2).)

The Seventh Circuit has held that "an officer testifies as an expert when he brings 'the wealth of his experience as [an] officer to bear on [his] observations and ma[kes] connections for the jury based on that specialized knowledge." *United States v. Christian*, 673 F.3d 702, 709 (7th

5

Cir. 2012) (quoting *United States v. Gaytan*, 649 F.3d 573, 582 (7th Cir. 2011)).  The Defendants contend that the opinions the Government seeks to elicit from the identified witnesses go "beyond the observations that a normal person could make." *Jones*, 739 F.3d at 369.  Thus, because the anticipated testimony is based upon "specialized knowledge," such testimony is "expert," and the Government was required to provide a sufficient notice under Rule 16(a)(1)(G).

The Defendants argue the Government's Notice of Expert Testimony is woefully deficient because it fails to describe each expert's opinions, the bases and reasons for those opinions, and the witness' qualifications.  Instead, the Government provided a list of topics and then directed the Defendants to go find the details in the discovery that has been produced in this case.

In response, the Government maintains that the anticipated testimony discussed in its Notice is fact testimony and lay opinion testimony because it is based upon the law enforcement officials' personal observations during the course of this investigation and upon their own personal training and providing the same training to others.  The Government contends, however, if the testimony is viewed as "expert," its Notice is sufficient to satisfy the requirements of Rule 16(a)(1)(G). The Notice and the grand jury testimony produced during discovery provide detail of the witnesses' qualifications, what they will testify to, and the bases and reasons for their opinions. The Defendants have sufficient notice to prepare for trial.

The Defendants reply that the Government has not provided any controlling case law from the Seventh Circuit to support its position about the nature of the anticipated testimony.  They maintain that the testimony is expert, not lay, and the Notice was deficient.

After carefully reviewing the Government's Notice of Expert Testimony, the parties' briefing, and the case law, the Court determines that the anticipated testimony consists of both fact testimony and expert testimony, and the Government's pretrial Notice is sufficient.

In determining whether testimony is "expert" testimony, the Seventh Circuit has provided some guidance:

> Lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field. We have explained that a law-enforcement officer's testimony is a lay opinion if it is limited to what he observed . . . or to other facts derived exclusively from a particular investigation. On the other hand, an officer testifies as an expert when he brings the wealth of his experience as an officer to bear on those observations and makes connections for the jury based on that specialized knowledge.

*Christian*, 673 F.3d at 709 (internal citations, brackets, and quotation marks omitted). Stated differently,

> [W]here the witness's testimony is based upon his own interactions with the parties in the course of the investigation, then it is based on personal knowledge and constitutes lay testimony. Where, however, it is based upon the officer's experience over the years . . . , and the officer is providing an opinion based on that experience . . . , then it is expert testimony.

*Jones*, 739 F.3d at 369 (internal citation omitted).

After reviewing the descriptions of the anticipated testimony in the Government's Notice, the Court concludes that some of the testimony is fact testimony, but some of the testimony is expert testimony because it will draw upon the law enforcement officials' and the "video specialist's" years of experience in the field, and it will be based upon their specialized knowledge gained in those years of experience. Some of the testimony will not arise from a "process of reasoning familiar in everyday life," but rather from a "process of reasoning which can be mastered only by specialists in the field." Because some of the anticipated testimony is likely expert testimony, the Defendants are entitled to pretrial notice.

The Court's review of the Government's Notice of Expert Testimony leads to the conclusion that Rule 16(a)(1)(G)'s requirement is satisfied. The Government's Notice is not limited to a generic, unhelpful list of topics that leaves the Defendants in the dark as to what testimony

will be elicited during trial. Rather, the Notice apprises the Defendants of three topics—(1) use of force policy and training testimony, (2) the August 28, 2018 use of force review meeting, and (3) Axon body camera testimony—and then summarizes the expected opinions, bases and reasons for the opinions, and the witnesses' qualifications. Rule 16(a)(1)(G) requires a summary, not a detailed report. And the purpose of this summary notice is to give the Defendants a fair opportunity to prepare to counter expert testimony during the trial. The Government's Notice provides the Defendants with a sufficient and fair understanding of the anticipated witnesses' opinions, bases and reasons for the opinions, and the witnesses' qualifications. The Defendants have been given enough to fairly prepare for trial and counter the anticipated testimony from the identified fact and expert witnesses.

## IV.    CONCLUSION

For the reasons explained above, the Court **DENIES** the Defendants' Motion to Exclude Expert Testimony ([Filing No. 236](#)). As noted in the Court's Entry on Motions *in Limine*, the procedures explained in *United States v. Jett*, 908 F.3d 252 (7th Cir. 2018) will be utilized when "dual role" testimony is given, and of course, the Government will first be required to lay a proper foundation and qualify its experts before expert testimony may be elicited. Defendant Krejsa shall docket and email to the Courtroom Deputy Clerk, a proposed limiting instruction by no later than **Friday, January 6, 2023**. During trial, at the Defendants' request, the Court will give the limiting instruction regarding the "dual role" testimony.

SO ORDERED.

Date:   12/22/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

8

DISTRIBUTION:

Peter A. Blackett
UNITED STATES ATTORNEY'S OFFICE
peter.blackett@usdoj.gov

Jonathan A. Bont
FROST BROWN TODD LLC
jbont@fbtlaw.com

Joshua James Burress
DENTONS BINGHAM GREENEBAUM
joshua.burress@dentons.com

Katherine Gray DeVar
DOJ-Crt
katherine.devar@usdoj.gov

Lauren I. Doyle
MARKUS/MOSS PLLC
ldoyle@markuslaw.com

Mary J. Hahn
DOJ-Crt
mary.hahn@usdoj.gov

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN
BLACKWELL BEMIS DUNCAN &
MERCHANT
ard@rkblegalgroup.com

K. Michael Gaerte
DENTONS BINGHAM GREENEBAUM
michael.gaerte@dentons.com

Erica MacDonald
FEAGRE DRINKER BIDDLE & REATH
erica.macdonald@faegredrinker.com

David Oscar Markus
MARKUS/MOSS PLLC
dmarkus@markuslaw.com

Daniel E. Pulliam
FEAGRE DRINKER BIDDLE & REATH
daniel.pulliam@faegredrinker.com

Jason Rauch
FEAGRE DRINKER BIDDLE & REATH
jason.rauch@faegredrinker.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN
BLACKWELL BEMIS DUNCAN &
MERCHANT
jfk@rkblegalgroup.com