**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cr-00094-TWP-TAB |
| | ) | |
| JOSEPH KREJSA, and | ) -03 | |
| COREY POSEY, | ) -04 | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON GOVERNMENT'S MOTION TO PRECLUDE TESTIMONY FROM
DEFENSE WITNESSES CHRIS GARD, PARRIS WARD, AND CHRIS MEADOWS**

This matter is before the Court on a Motion to Preclude Testimony from Defense Witnesses Chris Gard, Parris Ward, and Chris Meadows filed by the United States of America ("Government") (Filing No. 235). The seventeen-count Superseding Indictment in this criminal matter charges Defendant Joseph Krejsa ("Krejsa") with two counts of false report (Counts Five and Eight) and Defendant Corey Posey ("Posey") with one count of false report (Count Four) in violation of 18 U.S.C. § 1519 (Filing No. 64) (Krejsa and Posey are collectively referred to as "Defendants"). The other fourteen counts in the Superseding Indictment relate to co-Defendants Joseph Chase Winkle ("Winkle") and Jeremy Gibson ("Gibson"), who have pled guilty to the charges against them, leaving Krejsa and Posey as the remaining defendants to be tried. In its Motion, the Government asks the Court to prohibit testimony from defense witnesses Chris Gard, Parris Ward, and Chris Meadows because they fail to satisfy the requirements for expert testimony. For the following reasons, the Motion is **granted in part and denied in part**.

# I.   **BACKGROUND**

This case involves six separate incidents in which Muncie Police Department ("MPD") officers used excessive force and/or wrote false reports about those uses of force, occurring between March 2018 and February 2019. Winkle, Posey, and Gibson were employed as officers with MPD, and Krejsa was employed as a sergeant with MPD. On March 11, 2020, a federal grand jury returned a twelve-count Indictment arising from five separate incidents involving Winkle, Krejsa, and Gibson (Filing No. 1).

More than a year later, on April 13, 2021, the grand jury returned the seventeen-count Superseding Indictment, adding a sixth incident and adding Defendant Posey (Filing No. 64). The lead Counts (Counts One through Five) involve the conduct of all four Defendants in connection with the arrest of L.G. on August 9, 2018. Specifically, during the arrest of L.G., Winkle is charged with using his knee to strike L.G.'s head and neck, and Gibson is charged with stomping on and using knee strikes against L.G.'s head, all without legal justification. Count One alleges that Winkle used unreasonable force during the arrest of L.G. in violation of 18 U.S.C. § 242. Count Two alleges that Gibson used unreasonable force during the arrest of L.G. in violation of 18 U.S.C. § 242. Counts Three, Four, and Five allege that Winkle, Posey, and Krejsa, respectively, wrote false reports about this incident in violation of 18 U.S.C. § 1519. The remaining Counts (Counts Six through Seventeen) do not allege or charge Posey with any illegal conduct, nor do those Counts contain any allegations about Posey. Count Eight alleges that Krejsa wrote a false report, in violation of 18 U.S.C. § 1519, about a separate incident that occurred more than two months earlier. That earlier incident occurred on June 5, 2018, wherein Winkle used similar unreasonable force against N.B. and R.F. during their arrest.

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Evidence 702 governs testimony of expert witnesses. Rule 702 provides,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

"Under the *Daubert* gatekeeping requirement, the district court has a duty to ensure that expert testimony offered under Federal Rule of Evidence 702 is both relevant and reliable." *Jenkins v. Bartlett*, 487 F.3d 482, 488–89 (7th Cir. 2007) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). "Whether proposed expert testimony is sufficiently reliable under Rule 702 is dependent upon the facts and circumstances of the particular case." *Id.* at 489. The Court is given "latitude in determining not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (citing *Jenkins*, 487 F.3d at 489).

"In determining reliability, *Daubert* sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the scientific community." *Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993)). "The court should also consider the proposed expert's full range of experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion." *Id.*

3

> Since the gatekeeping inquiry must be tied to the facts of the particular case, . . . a trial court may - but is not required to - consider "one or more of the more specific factors that *Daubert* mentioned when doing so will help determine the testimony's reliability." But, the [Supreme] Court stressed, those factors, which were meant "to be helpful, not definitive," "neither necessarily nor exclusively apply to all experts or in every case." Their applicability will depend on "'the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" The procedure employed will depend largely on the "particular circumstances of the particular case at issue."

*Richman v. Sheahan*, 415 F. Supp. 2d 929, 934 (N.D. Ill. 2006) (quoting *Kumho Tire*, 526 U.S. at 142, 150, 152).

Additionally, the district court must determine whether the proposed expert testimony will assist the trier of fact in determining a fact in issue or understanding the evidence. *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002). "Determinations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Gayton*, 593 F.3d at 616.

> Vigorous cross examination, presentation of contrary evidence and careful jury instructions . . . are the traditional and appropriate means of attacking shaky but admissible evidence. The rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.

*Richman*, 415 F. Supp. 2d at 933 (citations and quotation marks omitted).

## III.   <u>DISCUSSION</u>

The Superseding Indictment charges the Defendants with writing false reports, in violation of 18 U.S.C. § 1519, regarding the use of unreasonable force against arrestee L.G. on August 9, 2018, with an additional charge of false report against Krejsa involving an incident with arrestees N.B. and R.F. on June 5, 2018. In connection with writing the allegedly false reports, the Defendants reviewed body-worn camera video footage of the incidents. In advance of trial, the Defendants provided to the Government a Notice Regarding Expert Witnesses, explaining that

4

they intend to call as expert witnesses at trial Chris Gard, Parris Ward, and Chris Meadows. The Notice informed the Government of the anticipated testimony of these expert witnesses, and it provided the witnesses' qualifications through their curriculum vitae or resume.

The Defendants contend,

> Critical to Mr. Krejsa's defense are showing the jury (1) what the underlying Axon audit logs of his viewing activity of the body-worn camera footage show, or don't show, as an evidentiary matter by use of unique terminology that will not be readily understood by the jury; (2) the limitations on an officer's ability to review the videos under the technological limitations placed upon Mr. Krejsa; and (3) the impact of the other distractions on Mr. Krejsa's cognitive ability to observe these videos and write reports.

(Filing No. 250 at 3.)

Concerning their intentions for calling Chris Gard, the Defendants contend,

> Christopher Gard is a retired law enforcement officer with 30 years in law enforcement in a small-size city in the state of Washington. He presents and testifies on police practices and use-of-force cases and has assessed customs, principles, and standards that are generally accepted in the law enforcement field for use-of-force issues. He has developed strategies and plans to ensure best performance by law enforcement officers and oversaw police department programs for evaluating officer performance. He has served as a defense tactics instructor and has received numerous trainings and certifications in law enforcement leadership. Mr. Gard's testimony will be limited to the impact of multitasking and divided attention in the law enforcement setting and how divided attention may impact internal reporting, review of body-worn camera evidence, and chain of command responsibilities. Dkt. No. 235-2.

*Id.*

In its Motion to Preclude Testimony from Defense Witnesses, the Government argues,

> [N]one of the proffered expert testimony satisfies the requirements of Rule 702, and the testimony should be excluded. The witnesses' proffered opinions are irrelevant and prejudicial; the witnesses are not experts on the topics for which they have been proffered; and their opinions are unhelpful, unreliable, and related to topics that are inappropriate for expert testimony because they fall well within the ken of the jurors' common experiences.

(Filing No. 235 at 2.) The Government continues,

[E]ach of these witnesses is being offered by the defendant so that the "experts" can serve as mouthpieces for the defendant and allow him to present to the jury his self-serving narrative—i.e., that he did not see the uses of force on the videos before writing his reports—without having to subject himself to the truth-seeking function of cross examination.

*Id.* at 3.

As to defense witness Chris Gard, the Government attacks his qualifications based upon his education and experience, and it argues that his proposed testimony is not relevant or helpful to the jury. It argues that the anticipated testimony regarding multitasking's effect on performing work responsibilities is common knowledge within the understanding of a jury. The Government further argues that Chris Gard's anticipated testimony about general police practices and policies is not relevant to the issues for trial because the Muncie Police Department had specific policies that the Defendants were trained on and held to regarding each of the events at issue. Thus, Chris Gard's opinion about best practices as to general police policies and practices is not relevant.

Regarding Parris Ward, the Defendants note,

Second, Parris Ward is LEVA level 4 certified in advanced forensic video analysis and the law and has taught classes on body-worn cameras and other recordings and the law. He has published and presented on analyzing video evidence in officer use-of-force cases and forensic analysis of digital video. Mr. Ward's testimony will be limited to how lighting conditions affect image quality on body-worn camera videos, video frame rate analysis, and video resolution analysis. Dkt. No. 235-3.

*Id.* at 4.

Regarding the Defendants' intentions for calling Chris Meadows, Defendants state,

Sgt. Chris Meadows of the Los Angeles County Sheriff's Department works in his department's homicide bureau's body-worn camera unit. He is a certified video forensic technician through the Law Enforcement & Emergency Services Video Association ("LEVA") and works regularly with Axon metadata and audit reports. He has received awards for developing evidence computer systems, has a certification with Axon in body-worn cameras, and has received training on video forensics and digital evidence, body-worn camera best practices and training, and forensic video for investigators. *See* Dkts. 235-4 and -5. He will testify to the Axon

metadata report terminology, how those terms translate to real life video review, and the limitations on reviewing compressed video streamed across Axon's systems across limited Internet bandwidth. *See* Defendants' Joint Notice Regarding Expert Witnesses available at Dkt. Nos. 235-5 and 235-4.

*Id.* at 3–4.

Regarding the first element under Rule 702, the Seventh Circuit has explained that "expert testimony is helpful to the jury if it concerns a matter beyond the understanding of the average person, assists the jury in understanding facts at issue, or puts the facts in context." *United States v. Welch*, 368 F.3d 970, 974 (7th Cir. 2004). "Where expert testimony addresses an issue of which the jury is already generally . . . aware, such testimony does not assist the jury." *Id.* (internal citation and quotation marks omitted).  The Court will address each proposed expert in turn, beginning with Chris Gard.

It does not require an expert witness to point out that multitasking can impact a person's ability to perform their job duties, even in the specific context of the employment responsibilities of a law enforcement supervisor. A lay person serving on a jury is well equipped based on common, everyday experiences to understand the effects of multitasking. Expert testimony on this basic topic is not necessary or "helpful to the jury." Because the Defendants clarified in their response to the Motion that Chris Gard's testimony would be "limited to the impact of multitasking and divided attention in the law enforcement setting and how divided attention may impact internal reporting, review of body-worn camera evidence, and chain of command responsibilities," and because this topic does not require an expert to help the jury, the Court **grants** the Government's Motion to exclude Chris Gard from testifying during trial.[1]

---

[1] In its Motion, the Government informed the Court that,

The defendants provided by email a *curriculum vitae* for Lewis Von Kliem and stated that Mr. Von Kliem would substitute for Chris Gard in the event Mr. Gard could not testify. The defendants failed to provide a Rule 16 notice for Mr. Von Kliem, which would alone be sufficient for exclusion. In

As to defense witness Parris Ward, the Government attacks his qualifications based upon his education, training, and experience because there is no indication that he is trained on or experienced with the Axon systems specifically or the Axon body worn cameras. The Government contends that Parris Ward's testimony will not be helpful to the jury because they do not need to decide the technical reasons why a video recording might appear a certain way or decide whether the video quality would have been better if it had been taken in different lighting.[2] Furthermore, the jury can decide for themselves whether the lighting in the videos is poor. The Government fleetingly asserts that Parris Ward's opinion would be unfairly prejudicial because technical jargon about the videos would distract the jury.

The Court has reviewed Parris Ward's curriculum vitae and determines that he is qualified based upon his education, training, and experience to testify about how lighting conditions affect image quality on body-worn camera videos, video frame rate analysis, and video resolution analysis. The Government suggests he is unqualified because he does not have experience with the Axon system specifically, but the Court disagrees that this disqualifies him.

The Court agrees with the Defendants that Parris Ward's testimony--explaining why lighting impacts image quality and an officer's ability to view the activity on the video--may be helpful to the jury as this information is not readily understood by a lay person from general

---

addition, his testimony should be excluded for the same reasons set forth below regarding Mr. Gard's testimony.

(Filing No. 235 at 1, n.2.) The Defendants did not respond to this assertion and argument regarding Lewis Von Kliem. For the same reason that the Court is precluding Chris Gard from testifying as an expert at trial, Lewis Von Kliem also is precluded from testifying at trial.

[2] The Government also challenges a second proffered opinion—that certain factors could impact the quality of the viewing experience for users of the Axon system—but in their response, the Defendants clarified that "Mr. Ward's testimony will be limited to how lighting conditions affect image quality on body-worn camera videos, video frame rate analysis, and video resolution analysis." Therefore, the Court declines to address this abandoned second proffered opinion.

experience. As noted by the Defendants, where low-light situations require longer exposures, objects that are moving will blur because the longer frame rate will freeze the action, and this is the type of expert testimony that Rule 702 allows because it supplements the everyday knowledge that a juror has.

Regarding the anticipated testimony about lighting conditions affecting image quality, neither party addresses in detail any principles and methods and application of the facts to those principles and methods. However, it appears from the briefing and the Defendants' Notice that Parris Ward has reached his conclusions based upon his years of experience and training, and he has applied the usual principles and methods in his field. Concerning the Government's argument of unfair prejudice because technical jargon about the videos would distract the jury, the Court concludes that this argument is unavailing because the Government itself has proffered an expert witness to testify about the data and technical aspects of the body-camera videos.

At this stage, the Court concludes that Parris Ward may testify during trial about "how lighting conditions affect image quality on body-worn camera videos, video frame rate analysis, and video resolution analysis." Of course, during trial, the Defendants will first be required to lay a proper foundation and qualify Parris Ward as an expert before expert testimony may be elicited. The Court **denies** the Government's Motion to exclude Parris Ward from testifying during trial.

Concerning defense witness Chris Meadows, the Government argues that he is not qualified to testify as an expert because there is no indication that he has experience with interpreting the terminology and metadata of Axon videos. The Government asserts that many of its arguments regarding Parris Ward apply to Chris Meadows. It argues that Chris Meadows's testimony is based upon speculation and should not be allowed. Additionally, his testimony will mislead and confuse the jury.

In response to the Motion, the Defendants note that Chris Meadow would be called to testify about "the Axon metadata report terminology, how those terms translate to real life video review, and the limitations on reviewing compressed video streamed across Axon's systems across limited Internet bandwidth." And they point out that Chris Meadows has extensive experience in his years as a law enforcement officer with body worn video data, including Axon. He has reviewed all the Axon metadata reports in this case and understands the reports and terminology. He has formed his opinions based on his experience and applying that to the data in this case.

The Court is satisfied by the resumes of Chris Meadows and the explanation from the Defendants regarding his training and experience that he is qualified to testify about the Axon metadata report terminology and how those terms translate to real life video review. However, at this stage, the Court is not satisfied that Chris Meadows's testimony is the product of reliable principles and methods, or that he has reliably applied those principles and methods to the facts of this case. Moreover, the Court agrees with the Government that testimony from Chris Meadows about "the limitations on reviewing compressed video streamed across Axon's systems across limited Internet bandwidth" is not sufficiently based on facts in this case and would be improperly founded upon speculation. Such testimony would invite the jury to improperly speculate.

Sergeant Meadows' testimony suggesting that computers and internet connections might impact the viewing quality of the videos, without any factual link to the actual systems at MPD (let alone the actual circumstances under which the defendant viewed the videos on those systems), has little-to-no probative value and runs the risk of confusing the jury. Considering Federal Rule of Evidence 403, the Court determines this testimony would be unduly prejudicial. Accordingly, the Government's Motion to exclude Chris Meadows from testifying as an expert witness during trial is **granted**.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** the Government's Motion to Preclude Testimony from Defense Witnesses Chris Gard, Parris Ward, and Chris Meadows (Filing No. 235). The Motion is **granted** in that Defense witness Chris Gard and Chris Meadows may not be called to testify as an expert witness during trial. The Motion is **denied** in that Defendants may call Parris Ward as an expert witness. During trial, the Defendants will first be required to lay a proper foundation and qualify Parris Ward as an expert in his field before the jury.

**SO ORDERED.**

Date:    12/28/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Peter A. Blackett
UNITED STATES ATTORNEY'S OFFICE
peter.blackett@usdoj.gov

Jonathan A. Bont
Frost Brown Todd LLC
jbont@fbtlaw.com

Joshua James Burress
DENTONS BINGHAM GREENEBAUM
joshua.burress@dentons.com

Katherine Gray DeVar
DOJ-Crt
katherine.devar@usdoj.gov

Lauren I. Doyle
MARKUS/MOSS PLLC
ldoyle@markuslaw.com

K. Michael Gaerte
DENTONS BINGHAM GREENEBAUM
michael.gaerte@dentons.com

Nicholas J. Linder
UNITED STATES ATTORNEY'S OFFICE
nick.linder@usdoj.gov

Erica MacDonald
FEAGRE DRINKER BIDDLE & REATH
erica.macdonald@faegredrinker.com

David Oscar Markus
MARKUS/MOSS PLLC
dmarkus@markuslaw.com

Daniel E. Pulliam
FEAGRE DRINKER BIDDLE & REATH
daniel.pulliam@faegredrinker.com

Mary J. Hahn
DOJ-Crt
mary.hahn@usdoj.gov

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN
BLACKWELL BEMIS DUNCAN &
MERCHANT
ard@rkblegalgroup.com

Jason Rauch
FEAGRE DRINKER BIDDLE & REATH
jason.rauch@faegredrinker.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN
BLACKWELL BEMIS DUNCAN &
MERCHANT
jfk@rkblegalgroup.com